## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE C. KENAWELL, | ) |
| | ) |
| Plaintiff, | )     CIVIL ACTION NO. 3:2005-429 |
| | ) |
| v. | ) |
| | ) |
| DUBOIS BUSINESS COLLEGE, INC., | )     JUDGE GIBSON |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

## I.    INTRODUCTION

This is a civil action based upon a claim of employment discrimination. Plaintiff, Lawrence Kenawell (hereinafter "Plaintiff" ), a former employee of Defendant, DuBois Business College (hereinafter "Defendant" or "DBC"), alleges that DBC discriminated against him on the basis of his gender and age.

Plaintiff and Defendant have cross-filed petitions (Documents No. 15 and 21, respectively) moving for summary judgment.[1] DBC asserts that all of Plaintiff's claims are time-barred or in the alternative, waived. Plaintiff contends that all of his claims are timely and there are genuine issues of material fact regarding DBC's reasons for terminating his employment.

After careful consideration of the motions for summary judgment, the parties' responses, the

---

[1] On June 4, 2007, this Court issued an Order (Document No. 22) informing the parties that Plaintiff's "Motion for Directed Verdict" (Document No. 21) shall be treated as a motion for summary judgment.

1

memoranda of law in support of the motions, and the record properly before the Court, and for the

reasons that follow, this Court will grant Defendant's motion for summary judgment.

## II. UNDISPUTED FACTUAL HISTORY[2]

1.    Defendant DBC is a Pennsylvania business corporation that provides post-secondary training. The gender composition of Defendant's employees was female except for one male director.

2.    Plaintiff worked for Defendant for approximately six (6) years with his last position as the Director of Admissions.

3.    Plaintiff was terminated from his position on March 16, 2004. Plaintiff filed a complaint with the assistance of counsel with the Pennsylvania Human Relations Commission (hereinafter "PHRC") regarding his discharge.

4.    Plaintiff was replaced by a female employee.

5.    Plaintiff's PHRC complaint was dual-filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") at number 17FA463542.

6.    The PHRC ruled that there was insufficient evidence to support probable cause. Plaintiff did not have any documents relating to his employment in his possession.

_____

[2]As dictated by Local Rule 56.1(B) and (C), the parties were required to separately file a Concise Statement of Facts and an Appendix that would be referenced in the Concise Statement of Facts. Despite this Court's Order of June 4, 2007 (Document No. 22) mandating that the parties comply with Local Rule 56.1(B) and (C) and instructions on the docket directing parties as to the proper manner to file the documents, the parties continued to misfile the documents necessitating Erratas to the Memoranda in Support of the parties' summary judgment motions, to the Concise Statements of Facts and to the appendices. (See Documents Nos. 26-33). After much deciphering, the relevant documents are designated as follows:

1) Defendant's Memorandum in Support - Document No. 17
2) Defendant's Concise Statement of Facts - Document No. 25
3) Defendant's Appendix -Document No. 15 (Exhibits 3 - 11)
4) Plaintiff's Memorandum in Support - Document No. 32
5) Plaintiff's Responsive Concise Statement of Facts - Document No. 35
6) Plaintiff's Appendix - Document No. 34

Accordingly, the Court has gleaned the following factual background from the Complaint (Document No.1) and the above documents. If a proposed fact of the parties is not included herein it was considered to be in dispute by the Court. Some of the facts as set forth have been modified by the Court to conform such proposed facts to the exhibits upon which the proposed facts rely. This was done to ensure that the proposed fact does not misconstrue the evidence supporting it.

7.  On January 4, 2005, Plaintiff sought the EEOC's review of the PHRC dismissal of Plaintiff's complaint.

8.  The PHRC denied Plaintiff's request for a preliminary hearing in a letter dated March 22, 2005.

9.  Plaintiff received his right-to-sue letter from the EEOC on August 15, 2005.

10. Plaintiff filed his complaint with this Court on November 14, 2005.

11. Count I of the complaint alleges sex discrimination in employment under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C.A. Section 2000, *et seq*.

12. Count II alleges age discrimination under the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. Section 623(a).

13. Count III alleges wrongful termination under the ADEA, Title VII, and the Pennsylvania Human Relations Act (hereinafter "PHRA").

14. Count IV alleges a violation of the Civil Rights Act of 1964.

15. Defendant filed its motion for summary judgment on October 2, 2006. Plaintiff filed his own motion for summary judgment on November 11, 2006.

## III. STANDARD OF REVIEW

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the Court is obligated to "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007). The moving party's burden can be "discharged by 'showing' – that is, point out to the District Court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2458, 91 L.Ed 265

3

(1986). If the moving party meets this burden, the burden then shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986); *Petruzzi's IGA Supermarkets Inc. v. Darling-Delaware Co., Inc.* 998 F.2d 1224, 1230 (3d Cir. 1993). "Such affirmative evidence - regardless of whether it is direct or circumstantial - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460-461 (3d Cir.1989)). When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250, 106 S.Ct. 2505, 2510-2511, 91 L.Ed.2d 202, 212-213 (1986).

## IV. DISCUSSION

### A. The Parties' Arguments

Plaintiff argues that his November 14, 2005 Complaint (Document No. 1), which alleges sex and age discrimination and wrongful termination, was timely filed. He asserts that the statutory limitations period did not begin to run until August 18, 2005, the day he received his right-to-sue letter (dated August 15, 2005) from the EEOC. Thus, the 90-day period expired on November 16, 2005, two days after he had filed his complaint. Plaintiff also argues that there is a genuine issue of material fact in regard to whether his termination was for a legitimate, non-discriminatory reason or whether it was a pretext for discrimination.

4

DBC contends that: (1) Plaintiff "had thirty (30) days from the date of the termination of the PHRC's proceedings to initiate this action in the federal courts for . . . Counts I and IV of the Complaint" (Document No. 15, Defendant's Motion for Summary Judgment, p. 2); (2) Plaintiff's claim of age discrimination is waived and time-barred since he did not raise this allegation with the PHRC or the EEOC and also because he failed to file a complaint within 300 hundred days from the date of his discharge; (3) Plaintiff cannot rebut Defendant's legitimate reasons for terminating his employment; and (4) Plaintiff failed to provide support for his wrongful termination claim.

## B. Timeliness of Plaintiff's Claims

### (i) Was Plaintiff's Sex Discrimination Claim Timely?

Both Title VII and the PHRA establish a right to be free from discrimination based on an individual's sex. 42 U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a). Additionally the PHRA prohibits discrimination based upon age. The two statutes also require that claimants exhaust their administrative remedies before bringing suit in court. 42 U.S.C. § 2000e-5; 43 P.S. § 962(c). The ADEA, which is the federal counterpart to the PHRA as it also prohibits discrimination based on age. 29 U.S.C. § 626(d)(2).[3] DBC argues that Plaintiff's sex discrimination charge was untimely with respect to Plaintiff's filing with this Court. DBC also argues that Plaintiff's age discrimination claim was waived and untimely as he did not pursue the administrative remedies before filing a judicial claim.

Title VII and the ADEA mandate that a charge of employment discrimination must be filed with

---

[3]As Plaintiff resides in Pennsylvania, a "deferral" state, he is required to utilize state remedies before engaging in federal judicial relief. See 29 U.S.C. § 633(b); 43 P.S. §§ 955(a), 959; *Seredniski v. Clifton Precision Prods. Co.*, 776 F.2d 56, 63 (3d Cir. 1985); *Sharpe v. Philadelphia Hous. Auth.*, 693 F.2d 24, 26 (3d Cir. 1982).

the EEOC within 180 days after the occurrence of the alleged unlawful employment practice "... except that in a case ... which the [claimant] has initially instituted proceedings with a State or local agency, ... such charge shall be filed by or on behalf of the [claimant] within [300] three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." 42 U.S.C. § 2000e-5(e)(1); Section 7(d) of the ADEA, 29 U.S.C. § 626(d); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383 (3d Cir. 2007). The EEOC must then investigate the charges brought by the claimant. If the charge is dismissed by the EEOC or if after 180 days, the EEOC has not resolved the issue, then the EEOC must notify the claimant in a right-to-sue letter. "The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (citations omitted). The claimant must file a civil action within 90 days of the date in which he or she receives notice of the EEOC's decision. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). "The on-set of the 90-day period is generally considered to be the date on which the complainant receives the right-to-sue letter." *Burgh*, 251 F.3d at 470 (citations omitted).

The PHRA contains the same requirement that a plaintiff must follow the administrative process under the PHRA before initiating a judicial action. The claimant must file a complaint with the PHRC "within one hundred and eighty [180] days after the alleged act of discrimination." 43 P.S. § 959(h). Once the complaint is filed, the PHRC commences an investigation and the complainant cannot file a court action for a year. 43 P.S. § 962(c)(1). If the PHRC does not resolve the administrative claim

6

within one year, it must issue a right-to-sue notice informing the claimant that he can file suit in the Court of Common Pleas. *Id.* The civil action must be brought within two years of receipt of the PHRC notice. 43 P.S. § 962(c)(2).

The Court agrees with Plaintiff that his sex discrimination claim was timely, both in regards to his administrative claims (with the EEOC and the PHRC) and his filing with this Court. Plaintiff had initiated a proceeding with PHRC on May 11, 2004. Document No. 15, Defendant's Appendix, Exhibit 9, pp. 11 and 13. The PHRA claim was filed within 180 days of the alleged unlawful employment practice, the alleged gender-based termination on March 16, 2004. Thus, Plaintiff's state administrative claim was timely. 43 Pa.C.S. § 959(h). Plaintiff had cross-filed his state administrative complaint with the EEOC which was well within the statutory limitations and thus was also timely. 42 U.S.C. § 2000e-5(e)(1). Defendant's argument that Plaintiff had 30 days to file his sex discrimination claim in federal courts, *see* p. 2 of Defendant's Memorandum, is not a correct reading of 42 U.S.C. § 2000e-5(e)(1) as that section directly dictates that the claimant must file an employment discrimination *charge* with the EEOC within three hundred (300) days of the alleged unlawful discriminatory act or within thirty (30) days "after receiving notice that the State or local agency ha[d] terminated the proceedings under the State or local law."

As part of his state administrative claim, the PHRC investigated Plaintiff's complaint and found that the evidence was insufficient to show the occurrence of an unlawful act of discrimination. Defendant's Exhibit 9, p. 16. The PHRC sent a notice to Plaintiff on March 22, 2005 informing him of the termination of its proceedings and of his right to file a complaint with the Pennsylvania Court of

7

Common Pleas. *Id.* at 22-23. On January 4, 2005, Plaintiff then sought the EEOC's review of the PHRC dismissal of his complaint. *Id.* at 25. On August 15, 2005, the EEOC adopted the PHRC's findings, terminated his charge of employment discrimination, and issued a right-to-sue notice, an indication of a "final agency action." *Id.* at 3; *Burgh*, 251 F.3d at 471. *See also Waiters v. Parsons*, 729 F.2d 233, 234 (3d Cir.1984) ("Where there is no final agency action, there is no limit on the time in which a suit may be filed in district court.") The EEOC right-to-sue letter, which would allow Plaintiff to file a judicial complaint, was sent to Plaintiff's counsel on August 15, 2005 who received the letter on August 18, 2005. Plaintiff's Motion for Summary Judgment, p. 2. *See Burgh supra.* Plaintiff subsequently filed his complaint with this Court on November 14, 2005, 88 days after receipt of the right-to-sue letter. Thus, the Court concludes that Plaintiff's sex discrimination claim was timely filed and Plaintiff can move forward with the claim.

### (ii) Was Plaintiff's Age Discrimination Claim Timely?

The Court, however, disagrees with Plaintiff that his age discrimination claim was timely. Plaintiff argues that the JS 44 form that he filed on November 10, 2005 stating he was filing suit for age and sex discrimination is enough to establish that he had exhausted his administrative remedies for both charges. The Court finds this argument disingenuous. Plaintiff has made no attempts to present evidence showing that he had filed with the PHRC and EEOC, an age discrimination charge along with the original sex discrimination complaint. The only evidence that Plaintiff submits in regard to his administrative proceedings is the EEOC's right-to-sue notice which states that the EEOC has adopted

8

the PHRC's findings and that Plaintiff has 90 days within which to bring a judicial complaint.[4] Document No. 34, Plaintiff's Appendix, p. 6. The record establishes that Plaintiff's administrative claims with the EEOC and the PHRC were only for sex discrimination. See Defendant's Exhibit 9, pp. 7-10 (PHRC Findings of Fact discussing whether Plaintiff had established a *prima facie* case for sex discrimination and finding that Defendant has proffered a legitimate reason for Plaintiff's termination); *Id.* at pp. 11-15 (Plaintiff's state administrative complaint filed with the PHRC stating that Plaintiff's sex discrimination claim was dual-filed with the EEOC and alleging that Defendant discriminated against him because of his sex); *Id.* at p. 20 (a letter sent by Plaintiff's counsel to the PHRC requesting a Preliminary Hearing and averring that Plaintiff had "established a *prima facie* case," that Defendant's reason for his termination was a "pretext for blatant sexual discrimination," and that the PHRC initial finding that DBC's had a legitimate reason for terminating Plaintiff due to 'unwelcome, unsolicited and grossly unprofessional sexual overtones' was "slanderous, false and wholly without merit."); *Id.* at p. 3 and Plaintiff's Appendix, p. 6. As Plaintiff did not exhaust his state remedies with regard to his age discrimination claim, he is barred from pursuing that claim in this instant matter.

## C. Plaintiff's Sex Discrimination Claim

Title VII and the PHRA both prohibit an employer from engaging in gender discrimination against an employee. These types of claims are analyzed under the *McDonnell Douglas* burden-shifting paradigm. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

---

[4]The Court notes that Plaintiff objected to Defendant's Question No. 10 in the Interrogatories (Defendant's Exhibit 10) asking Plaintiff to describe the steps he took to file a timely charge of discrimination with the EEOC and he asserted that "such facts are a matter of public record." Defendant's Exhibit 10, p. 4. As indicated, Plaintiff did not provide records of his administrative proceedings with the EEOC and the PHRC.

(1973). This burden-shifting analysis dictates that (1) plaintiff bears the burden of establishing a *prima facie* case of discrimination; (2) the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; (3) if defendant meets its burden, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-806, 93 S.Ct. 1817, 1824-1826, 36 L.Ed.2d 668, 677-679.

To establish a *prima facie* case of gender discrimination, plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; and (3) he suffered an adverse employment action or was discharged "under conditions that give rise to an inference of unlawful discrimination." *Geraci v. Moddy-Tottrup, Int'l Inc.*, 82 F.3d 578, 580 (3d Cir.1996) (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 214 (1981)).

### (i) Did Defendant Proffer a Legitimate, Non-Discriminatory Reason for Plaintiff's Discharge?

DBC does not appear to challenge Plaintiff's ability to state a *prima facie* case. Instead it argues that Plaintiff's termination was based on legitimate, non-discriminatory reasons. Defendant asserts that Plaintiff was discharged from his position because "he made unwelcome [sic], unsolicited and inappropriate sexual overtures to his subordinate female employee at DBC." Defendant's Brief in Support, p. 1. To that end, Defendant submitted the following documents:

1) An affidavit by Jackie Syktich, President of DBC, attesting to the circumstances surrounding Plaintiff's termination (Document No. 15-4).
2) A DBC Incident Report detailing Plaintiff's misconduct (Document No. 15-5).

10

3) Statement of the subordinate, Marissa Gracey, alleged to have been harassed by Plaintiff (Document No. 15-6).
4) Email Correspondence between Plaintiff and the subordinate (Document No. 15-7, 15-8).
5) An interoffice memorandum penned by Jackie Syktich regarding Plaintiff's PHRC Complaint (Document No. 15-9).
6) DBC Employee Handbook, (Document No. 37-2).
7) Two interoffice memoranda prepared by Jackie Syktich, (Document No. 37-3).

In the affidavit, Jackie Syktich (hereinafter "Syktich") discusses what led to Plaintiff's termination. Syktich prepared an incident report after receiving information from DBC employee, Marissa Gracey (hereinafter "Gracey"), that Plaintiff was making unwanted advances towards her. Syktich Affidavit, at ¶ 4. She completed the incident report on March 9, 2004 which recorded Gracey's complaints as sexual harassment incidents that occurred on and off campus (including field trips and other DBC functions). Gracey also showed Syktich the February 28, 2004 email Plaintiff had sent to Gracey informing her that she had "put a spell" on him and instructing her not to tell anyone about the contents of the email. Syktich states that she investigated the incident. Gracey also gave her a statement about the situation and two copies of the emails Plaintiff had sent to her. Syktich Affidavit, at ¶ 5. Syktich met with Plaintiff on March 16, 2004 and informed him that his termination would take effect immediately. *Id.* ¶ 6.

Syktich was the DBC representative that responded to Plaintiff's state administrative complaint with the PHRC (and the dual-filing with the EEOC). *Id.* at ¶ 8. She attests to investigating Plaintiff's allegations that he was the victim of sexual harassment while employed at DBC. *Id.* at ¶ 10. She conducted an inspection of DBC records and found no records of Plaintiff filing a complaint at any point during his employment. *Id.* On October 8, 2004, she prepared an interoffice memorandum

11

detailing her inspection and the results. *See* Document No. 15-9. Syktich avers that Plaintiff was treated the same way as all of DBC's employees and according to the DBC Employee Handbook and DBC policies. Syktich Affidavit at ¶ 18.

Plaintiff argues that Defendant has not proffered a legitimate reason for his termination. He points to three of the items Defendant has submitted as evidence as being defective. These are the DBC Incident Report, the Statement submitted by Marissa Gracey, the first email correspondence between Plaintiff and Marissa Gracey.[5]

He asserts that Defendant has failed to adhere to Rule 56 of Federal Rules of Civil Procedure and these items of evidence Defendant has submitted are unsworn and unverified. He contends that he has provided sufficient evidence showing that Defendant has established a pattern of discrimination against its employees.

Rule 56(c) reads, in pertinent part, as follows:

[Summary] judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

"One of the most common forms of evidence used on a summary judgment motion is affidavits . . . in support of or opposition to a Rule 56 motion. . . ." 10A Charles Alan Wright, Arthur R. Miller & Mary Kane Kane, Federal Practice and Procedure, § 2722, at 54 (3d ed. 1998). "By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury . . . [Furthermore,] all

---

[5]Plaintiff's questioning of the fitness of Defendant's evidence only extended to one of the emails submitted by Defendant. This email is dated February 28, 2004. Plaintiff does not argue that the other email, dated March 16, 2004, should not be considered by the Court.

papers referred to in an affidavit [must] be in the form of certified copies or sworn documents." *See generally* 11 Moore's Federal Practice § 56.14[1][b] (3d ed. 1997). Hearsay evidence contained in affidavits and deposition testimony may be sufficient to survive a summary judgment motion unless such evidence clearly would not be admissible at trial. *Clark v. Commonwealth of Pennsylvania*, 885 F. Supp. 694, 709 n.3 (E.D. Pa. 1995) (citing *Petruzzi's IGA Supermarkets*, 998 F.2d at 1234 n.9). Failure to submit materials in this form will cause the submission to be disregarded by the court in its consideration of the pending motion. *See generally* 11 Moore's Federal Practice § 56.14[1][b] (3d ed. 1997).

In the instant matter, it is Federal Rule of Civil Procedure 56(e) that more accurately bears on the consideration of Defendant's evidence and it states the following:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e)(1).

However, when unsworn or uncertified documents are attached to a sworn affidavit, they are acceptable for consideration in summary judgment proceedings. *See Haupt v. International Harvester, Co.*, 582 F.Supp 545, 547 (N.D. Ill. 1984); *see also Seifert v. Commonwealth of Pennsylvania Human Relations Commission*, 515 F.Supp.2d 601, 610 (W.D.Pa. 2007).

Syktich's affidavit does appear to be adequate under Federal Rule of Civil Procedure 56(e). It was made based on personal knowledge and it does contain admissible evidence. The same can be said

13

of the Incident Report. It was prepared based on Syktich's personal knowledge within the context of her functioning in the capacity of president of DBC. Syktich prepared the Incident Report after meeting with Gracey, an employee who wanted to report an incident of sexual harassment. During their meeting, Gracey showed Syktich and another employee, named Mary Jones, the February 28, 2004 email that Gracey had received from Plaintiff. They also discussed situations and interactions with Plaintiff that had made Gracey feel uncomfortable and afraid at work.

Conversely, there are aspects of the Incident Report that were not derived from Syktich's personal knowledge but from what Gracey told her. In this regard, the report could constitute inadmissible hearsay unless it falls under an exception to the hearsay rule. Under the Federal Rules of Evidence, "'hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(a). Hearsay statements are not admissible as evidence unless they fall under an exception to the hearsay rule. Fed. R. Evid. 802. If the Incident Report is being offered for the truth of the matter asserted, that Plaintiff did harass Gracey, then it would clearly be hearsay. So, the question that arises is whether the Incident Report is admissible under any exception to the hearsay rule.

Rule 803(6) of the Federal Rules of Evidence states that records that are kept in the course of regularly conducted business activity, not made for purposes of litigation, not indicating a lack of trustworthiness, and are made at or near the time of the reported events, fall under the hearsay exception and are admissible. It is clear from Syktich's Affidavit that the Incident Report was made for business purposes alone, that is, as a procedure engaged in when an employee reports a case of sexual

14

harassment. It was also prepared at a time near the incident, after Gracey had shown her a copy of an email she received from Plaintiff and also in the course of an investigation into the alleged sexual harassment. The record shows that Defendant is offering the Incident Report to show that it had a legitimate and non-discriminatory reason to terminate Plaintiff's employment. Thus, the Incident Report will not be stricken from the record and will be considered for the pending motions for summary judgment.

The same can be said for Gracey's submitted statement and the email correspondence between Gracey and Plaintiff. Although both documents were submitted as attachments to Syktich's affidavit and therefore, initially, acceptable for consideration for summary judgment, they are in fact hearsay. Both documents are not based on Syktich's personal first-hand knowledge and furthermore, there is no affidavit or testimony of record by Gracey attesting to the contents of the documents. However, this lack of authentication and presence of hearsay can be cured at the time of trial should Gracey testify as to her personal knowledge of the documents. *See Lexington Ins. Co. v. Western Pennsylvania Hospital*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005)(citations omitted). Therefore, despite an absence of authentication and the presence of hearsay, these matters may be a part of the summary judgment record before the Court. Therefore, these documents are admissible evidence.[6]

Plaintiff also argues that Defendant has not provided evidence showing that Plaintiff was aware of the reason he was terminated, that DBC had a sexual harassment policy, and that Plaintiff was aware

---

[6]Although Plaintiff does not argue the admissibility of the other email correspondence dated March 16, 2004 (*see* Document No. 15-8) between Plaintiff and Gracey, the above analysis applies to this document as well. Thus, it shall be permitted for consideration in the present motion.

of this policy. To that end, Defendant submitted the DBC Employee Handbook and two memoranda prepared by Syktich. Both memoranda are dated March 16, 2004; the day Plaintiff's employment was terminated. The first memorandum states that Marissa Gracey called Syktich on March 15, 2004 complaining of Plaintiff's continued harassment. The second memorandum chronicles Syktich's last conversation with Plaintiff where she informed him of his discharge from DBC. The Court notes that, as part of the same Order (dated June 4, 2007) referred to earlier (see notes 1 and 2), the Court notified the parties that they must seek leave of Court prior to filing any reply brief sought to be filed pursuant to Local Rule 56.1(D). *See* Document No. 22. The Employee handbook and the two memoranda were submitted by Defendant on August 8, 2007 without leave of Court. The Court finds the apparent inability of the parties to comply with the Court's case management orders troubling. As these documents were filed in violation of this Court's Order, these documents are inappropriate for consideration of the parties' motions of summary judgment.

Even without consideration of the DBC Employee Handbook and Syktich's Memoranda of March 16, 2004, the Defendant has established a legitimate, non-discriminatory reason for terminating Plaintiff's employment. The documentation for the PHRC and EEOC proceedings along with Jackie Syktich's Affidavit and the DBC Incident Report support Defendant's asserted legitimate non-discriminatory reason. Thus, Defendant has articulated, a legitimate, non-discriminatory reason for Plaintiff's discharge.

**(ii) Has Plaintiff Shown that Defendant's Proffered Reason is Based on Pretext?**

As Defendant has established a legitimate, non-discriminatory reason for its decision, the

burden shifts to Plaintiff to show that Defendant's proffered reason is pretextual. Plaintiff must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve defendant's articulated legitimate reasons or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's action. See *Fuentes*, 32 F.3d at 764; *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir.1992) (citation omitted). This means that Plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reasons such that a "reasonable fact-finder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reasons did not actually motivate" Defendant's action. *Fuentes*, 32 F.3d at 764-765 (quoting *Ezold*, 983 F.2d at 531); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir.1993).

Plaintiff refutes the legitimacy of Defendant's reason and asserts that he has presented sufficient evidence to lead a fact-finder to "reasonably disbelieve [Defendant's] articulated reason for discharge." Plaintiff's Brief in Support, p. 4. Plaintiff argues that Defendant did not provide evidence of a zero-tolerance policy against sexual harassment, of any communication between him and Defendant about the policy, and of Plaintiff engaging in any activity that would constitute a violation of DBC policy. He questions how Defendant could have discharged "an employee who had been with the Defendant for over 6 years and was a member of upper management on the basis of a single sexual harassment claim made by an employee who had been with the firm for merely 6 months." Plaintiff's Brief in Support, p. 4. The Court agrees that Plaintiff was an employee of DBC for six years and his last

17

position was an upper managerial position, that of Director of Admissions. Therefore, it would defy logic that Plaintiff, in such a position, would not be aware of DBC's policy regarding sexual harassment, of the conduct that would fall under DBC's policy, or of the repercussions for engaging in such conduct.

Plaintiff also argues that his evidence has shown that Defendant had developed a pattern of discriminating against its employees. He points to one of his answers in the Interrogatories as proof of his assertion. In Interrogatory No. 7, Plaintiff was asked to describe the DBC policies and practices that discriminated against male employees in favor of female employees. Plaintiff's answer was as follows:

Kenawell hereby objects to Interrogatory No. 7 in that Defendant is in possession of all relevant facts as to the DuBois Business College's discriminatory practices in general and specifically with respect to the effect of those practices in the decision to terminate Kenawell. Any further explanation would be redundant to the information in the possession of the Defendant. Without waiving the foregoing objections, it is Kenawell's belief that his sex and age were factors, among others, considered in the decision to terminate him from employment. Moreover, the fact that all or nearly all of the managers at the DuBois Business College were female; the fact that nearly all of the owners of the DuBois Business College are female; and that Kenawell was replaced by a female, of lesser age, lower qualifications, lesser abilities, and a lower salary; the fact that the DuBois Business College has used age [sic] a factor in deciding to terminate at least three other employees including, for example, Brenda Mullins; are all facts, among many others, that lead to this conclusion.

Document No. 34, Plaintiff's Appendix, Exhibit G, p. 10. *See also* Document No. 15-11, p. 3. Here, the Court also notes, that the only other DBC employee Plaintiff mentions as having experienced discrimination at the hands of DBC, is Brenda Mullins, whom Plaintiff alleges suffered age discrimination. This is the only instance and context in the record (other than Plaintiff's Brief in

18

Support) in which Brenda Mullins is mentioned. Plaintiff offers no evidence to support the argument that Defendant's reason for termination was predicated on his gender.

Plaintiff also argues Defendant did not conduct a thorough investigation which would have elicited the fact that Gracey "was in fact a mutual participant in all aspects [sic] their friendship . . . [that Gracey] . . . had a very friendly exchange with Plaintiff at a bar – outside of work – where it was clear that the friendship was particularly mutual . . . [and that] . . . a fact finder might reasonably conclude that: Plaintiff was guilty of no more than bad judgment in becoming friends with an immature and sad young lady who did not understand the limits of mature [sic] and honest friend." Plaintiff's Brief in Support, p. 9. Plaintiff appears to be arguing that his "mutual" relationship with Gracey was used as a convenient pretext to terminate him. These facts, as established by Plaintiff, are not enough to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reasons or to show that Plaintiff was discharged as a result of his sex. Therefore the Plaintiff has not met his burden at step three of *McDonnell Douglas* and summary judgment in favor of the Defendant is proper.

## D.    Plaintiff's Wrongful Termination Claim

Defendant moves for summary judgment on Count III of Plaintiff's Complaint and argues that Plaintiff is not able "to allege sufficient facts to defeat the presumption of his admitted at-will employment with DBC." Defendant's Brief in Support, p. 7. In his Complaint, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing in at-will employment contracts, the public policy exception to Title VII, PHRA, and ADEA and that Defendant's conduct was

19

a *per se* violation of common law and all exceptions to the at-will employment doctrine. Complaint at ¶ 32. Plaintiff further argues that he supplied additional consideration sufficient to change his employment status to that of a *de facto* contractual employment relationship.

In Pennsylvania, the long-standing doctrine is that an at-will employee can be discharged from his or her employment for any reason or no reason at all. *Carlson v. Arnot-Ogden Mem. Hosp.*, 918 F.2d 411, 414 (3d Cir. 1990); *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 435 (3d Cir. 1986); *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 224 (3d Cir. 1984). In this instant matter, it is undisputed that Plaintiff was an at-will employee of DBC.

Plaintiff bears the burden of overcoming the at-will employment presumption with evidence of definite and specific terms of employment. *See Murray*, 782 F.2d 432. Plaintiff has argued that because additional consideration was provided to him his employment agreement was not at-will. An employee may also be able to rebut the presumption of at-will employment with evidence that shows that he has provided consideration beyond the services for which he was hired. *Gorwara v. AEL Indus., Inc.*, 784 F.Supp. 239, 243 (E.D.Pa 1992). Plaintiff, however, has not proffered any such evidence.

The Court also rejects Plaintiff's argument that his claim falls within a public policy exception to the at-will employment doctrine. In order to utilize the public policy exception, Plaintiff must show that the nature of his termination would offend clear mandates of Pennsylvania's public policy. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003). However, it has been established that "[f]ederal courts, applying Pennsylvania law, will recognize such an exception only where there is no available statutory means of vindicating the public policy in question." *Kinally v. Bell of Pennsylvania*,

20

748 F.Supp. 1136, 1146 (E.D.Pa 1990). See also *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 912 (3d Cir. 1982). In other words, PHRA is an exclusive statutory remedy which preempts wrongful termination claims. See *Bruffett*, 692 F.2d at 915; *Bonham v. Dresser Indus., Inc.*, 569 F.2d 187 (3d Cir. 1977), *cert. denied*, 439 U.S. 821 (1978). Accordingly, the Court must grant the dismissal of Plaintiff's wrongful termination charge.

## E.    Conclusion

For the reasons set forth in the foregoing analysis, the Court shall grant Defendant's Motion for Summary Judgment as to all claims.

An appropriate Order follows.

**AND NOW**, this 20th day of March, 2008, in consideration of the Defendant's Motion for Summary Judgment (Document No. 15) and Plaintiff's Motion for Summary Judgment (Document No. 21), and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED. IT IS FURTHER ORDERED THAT judgment is to be entered for Defendant against the Plaintiff and the Clerk of Court is to mark this matter closed.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

21